UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SALVATORE SALERNO, | Civil No. 06-1717 (PJS/RLE) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| RIDGEWATER COLLEGE, | |
| Defendant. | |

James H. Kaster and Sarah M. Fleegel, NICHOLS KASTER & ANDERSON, PLLP, for plaintiff.

Jennifer A. Service, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendant.

Plaintiff Salvatore Salerno sued defendant Ridgewater College for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01 et seq.  Salerno later stipulated to the dismissal of his claim under the MHRA.  *See* Docket No. 17.  Ridgewater now moves for summary judgment on Salerno's ADEA claim.  For the reasons that follow, Ridgewater's motion is granted, and Salerno's complaint is dismissed.

I.  BACKGROUND

Salerno, who has a Ph.D. in sociology, has taught at many institutions, including the University of Massachusetts, St. Olaf College, the University of Minnesota, and Macalester College.  Salerno Dep. 32; Fleegel Aff. Ex. 6.  Salerno has published three books, written numerous articles and essays, and received multiple grants to pursue research and develop presentations.  Gabaccia Aff. ¶¶ 4-6; Fleegel Aff. Ex. 6.

Ridgewater is a member of the Minnesota State Colleges and Universities System and has two campuses — one located in Willmar, Minnesota, and the other in Hutchinson, Minnesota. Canon Aff. ¶ 2. In 2003, Salerno obtained a position as a temporary sociology instructor at the Hutchinson campus. Salerno Dep. 25, 27-28. From January 2003 through the spring semester of 2005, Ridgewater renewed Salerno's temporary appointment on a semester-by-semester basis. Salerno Dep. 26-28.

During the 2004–2005 school year, Ridgewater advertised openings for full-time tenure-track appointments to teach sociology at the Hutchinson and Willmar campuses. Canon Aff. ¶ 3; Salerno Dep. 32-34. An individual who was previously laid off by Ridgewater reclaimed the Hutchinson position pursuant to her rights as a union member. Salerno Dep. 33-34. Salerno and twenty-eight other candidates sought the remaining appointment at the Willmar campus. Canon Aff. ¶ 4. The ages of the candidates ranged from twenty-seven to sixty-five. Cannon Aff. ¶ 4 & Ex. B.

Ridgewater required its applicants to have, at a minimum, either a master's degree with a major in sociology or a master's degree with twenty-four quarter or sixteen semester graduate credits in sociology. Canon Aff. Ex. A. In addition, Ridgewater preferred candidates with teaching experience as well as familiarity with innovative teaching techniques such as the use of technology in the classroom. Canon Aff. Ex. A. The hiring committee, which was composed of eight employees of Ridgewater's Willmar campus, explained that they were looking for someone who could "communicate effectively with students," "engage students in a classroom setting," and demonstrate an "ability to teach." Morris Dep. 19; Woodke Dep. 19; Strehlow Dep. 24.

Using these qualifications as evaluation criteria, the hiring committee analyzed the candidates' written application materials and selected seven of the twenty-nine for an interview.

Strehlow Dep. 16; Canon Aff. ¶ 5.  Salerno was among the seven selected as a semi-finalist. Canon Aff. ¶ 5.  Each of the seven met the minimum qualifications and had previous teaching experience; three, including Salerno and Ronald Ferguson (who was ultimately chosen for the position), also held doctorate degrees.  Salerno Dep. 9; Ferguson Dep. 7; Cannon Aff. Ex. C.

The hiring committee required each semi-finalist to submit to an interview consisting of questions by the committee and a teaching demonstration by the candidate.  Salerno Dep. 34; Borgos Dep. 14-15.  In preparation for his own demonstration, Salerno wrote up lecture notes; during the demonstration, he essentially read his lecture notes aloud.  Salerno Dep. 35-36; Kutzke Dep. 17; Ogdahl Dep. 19, 23; Strehlow Dep. 26.  Salerno "lectured as [he] would in a classroom," and presented a teaching demonstration that he felt was "a good reflection of [his] teaching abilities."  Salerno Dep. 36.  In Salerno's opinion, the teaching demonstration "went very well."  Salerno Dep. 36.  After the interviews were complete, the hiring committee recommended four finalists for the Willmar appointment.  Salerno was not one of those recommended.  Strehlow Dep. 27.

Normally, the president of Ridgewater College makes the final hiring decision, but due to a personal connection with one of the four finalists, the president recused himself and appointed Vice President of Academic Affairs Betty Strehlow to make the final hiring decision.  Strehlow Dep. 17-18; Woodke Dep. 25.  Strehlow selected Ronald Ferguson to fill the full-time sociology instructor position "[b]ased on [the] content of the interview, his teaching demonstration, and overall fit with the minimum and preferred qualifications . . . ."  Fleegel Aff. Ex. 9 at 481.

Ferguson, like Salerno, had a doctorate degree and teaching experience.  Unlike Salerno, though, Ferguson presented an interactive technology-based teaching demonstration that appealed to the hiring committee.  Strehlow Dep. 29; Morris Dep. 13; Kutzke Dep. 18, 20.  At

the time of his hiring, Ferguson was in his early thirties. Canon Aff. Ex. B. Two of the other finalists were, like Salerno, in their fifties. The age of the fourth finalist is not known. Strehlow Aff. ¶ 3; Canon Aff. Ex. B.

After he was passed over for the job, Salerno filed a charge of age discrimination with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission. Fleegel Aff. Ex. 9. On November 22, 2005, the EEOC issued a determination that "the evidence obtained during the investigation establishe[d] that [Ridgewater] subjected [Salerno] to discrimination because of his age/55." Fleegel Aff. Ex. 9 at 424. On April 13, 2006, the EEOC also issued Salerno a Notice of Right to Sue. Fleegel Aff. Ex. 9 at 417. Salerno filed his complaint on May 8, 2006, and Ridgewater subsequently filed this motion for summary judgment.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the

non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B.  ADEA Claim

The ADEA prohibits an employer from refusing to hire an individual because of his age. 29 U.S.C. § 623(a)(1).  Where, as here, the plaintiff does not have strong or "direct" evidence of discrimination, the Court applies the burden-shifting framework of *McDonnell Douglas* to determine whether age was a motivating factor in the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, Salerno must first present a prima facie case of discrimination.  If he succeeds, he establishes a rebuttable presumption of discrimination, and the burden shifts to Ridgewater to produce a legitimate, nondiscriminatory explanation for the challenged employment action.  *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934-35 (8th Cir. 2006).  If Ridgewater does so, Salerno must then point to admissible evidence sufficient to permit a reasonable jury to find that Ridgewater's explanation is pretextual.  *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005).  Although the burden of production may shift, "[t]he plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996).  For that reason, "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993).

### 1.  Prima Facie Case

A plaintiff who alleges that he was not offered a job because of his age in violation of the ADEA must prove that (1) he was over age forty, (2) he was qualified for the position, (3) he was not hired, and (4) the employer hired a younger person to fill the position.  *Christensen v.*

*Titan Distribution, Inc.*, 481 F.3d 1085, 1096 (8th Cir. 2007); *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003). Ridgewater disputes only the fourth element. Although Ferguson, the *hiree*, was under forty years of age, Ridgewater argues that Salerno's prima facie case fails because the four finalists included two other candidates in the protected age group. Def.'s Mem. Supp. Summ. J. 5.

Ridgewater misconstrues the fourth element of the prima facie case. "[T]he important datum here is the age of the person whom [the defendant] chose as [the plaintiff]'s permanent replacement." *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136 (8th Cir. 2006). A prima facie claim of age discrimination is therefore established when the individual *hired* by the employer is younger than the plaintiff. Evidence that other protected persons were selected as finalists is certainly relevant at the pretext stage, but such evidence does not defeat a prima facie case. *Cf. Senner v. Northcentral Tech. Coll.*, 113 F.3d 750, 755 (7th Cir. 1997) (examining the pool of qualified candidates at the pretext stage); *Parnell v. Stone*, 12 F.3d 213 (Table), 1993 WL 524278, at *6 (6th Cir. 1993) (per curiam) (examining evidence of other finalists' ages at the pretext stage). Salerno has, therefore, established a prima facie case of age discrimination.

In its reply brief, Ridgewater also argues that the presence of other protected individuals in the finalist pool deprives Salerno of standing. Def.'s Reply Mem. Supp. Summ. J. 4. This argument fails for two reasons.

First, Ridgewater has confused the question whether a plaintiff has standing with the question whether the plaintiff has a winning case. Standing "in no way depends upon the merits of the plaintiff's contention that particular conduct is illegal . . . ." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). A contrary rule would mean that every plaintiff who *loses* — even plaintiffs who lose after a jury trial — would not have Article III standing. That obviously is not the law.

In pleading that Ridgewater failed to hire him due to his age, Salerno has alleged injury-in-fact, causation, and redressability, which is sufficient to give him standing.  *See Campbell v. Mpls. Pub. Hous. Auth.* ex rel. *City of Mpls.*, 168 F.3d 1069, 1074 (8th Cir. 1999).

Second, Ridgewater raised this issue for the first time in its reply brief.  It would be unfair to permit a movant to sandbag a nonmovant by asking the court to grant summary judgment on the basis of an argument made for the first time in a reply brief.  There was no reason why Ridgewater could not have made the standing argument in its initial brief.  Its failure to do so is itself sufficient reason to reject the argument.  *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) (finding that the district court could not rule on summary judgment on a ground raised in a reply brief because the plaintiff did not have an adequate opportunity to respond); *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (stating that a new argument is not a basis for granting summary judgment "because arguments raised in reply papers are not properly a basis for granting relief").

2.  Legitimate, Nondiscriminatory Explanation

Ridgewater may rebut the inference of unlawful discrimination arising from Salerno's prima facie case by offering a legitimate, nondiscriminatory explanation for its decision not to hire him.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509).  Indeed, a "proffered legitimate, non-discriminatory reason . . . need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of [the adverse employment action]."  *Twymon*, 462 F.3d at 935.

Ridgewater contends that it declined to hire Salerno for the position because of his poor performance during his teaching demonstration.  Def.'s Mem. Supp. Summ. J. 8.  The selection

committee recalled that Salerno simply stood and read from his notes and failed to engage his class. Ogdahl Dep. 19, 23; Strehlow Dep. 26-27; Kutzke Dep. 17; Hoffman Dep. 17. His performance, according to one committee member, was "horrible." Woodke Dep. 21-22. Though Salerno met the minimum qualifications of the position, the committee found that he did not demonstrate other qualities they believed important, including the ability to engage students' attention and interact effectively in a classroom setting. Woodke Dep. 22. As Ridgewater has submitted admissible evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the reason for Ridgewater's failure to hire Salerno, Ridgewater has rebutted the presumption of discrimination established by Salerno's prima facie case. *St. Mary's Honor Ctr.*, 509 U.S. at 507.

### 3. Pretext

Because Ridgewater has proffered a legitimate, nondiscriminatory reason for its decision not to hire Salerno, Ridegwater is entitled to summary judgment unless Salerno submits evidence sufficient to establish both that Ridgewater's proffered explanation is pretextual and that age-based animus was the real reason for Ridgewater's adverse action. *St. Mary's Honor Ctr.*, 509 U.S. at 515. In other words, evidence of pretext is not necessarily sufficient by itself to defeat summary judgment. *Reeves*, 530 U.S. at 148 ("This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."). An employer is entitled to summary judgment "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* At bottom, whether Salerno has raised a genuine issue as to Ridgewater's motivation depends on a number

of factors, including "the strength of [his] prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." *Id.* at 148-49.

Salerno first argues that Ridgewater's proffered reason for not hiring him is unworthy of belief because it has changed over time. Pl.'s Mem. Opp'n Summ. J. 13. Salerno points to the fact that Ridgewater first notified Salerno by phone that it found someone "more qualified" to fill the position. Salerno Dep. 41. Yet later, in its pleadings, Ridgewater contended that Salerno was not chosen because of his poor teaching demonstration. Def.'s Mem. Supp. Summ. J. 8; Strehlow Dep. 27-28. According to Salerno, these changing reasons are evidence of pretext.

Substantial changes in the reason offered by employers either directly to their employees or in the course of litigation may indeed support a finding of pretext. *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994). For example, when an employer initially emphasized that it wanted candidates to have a background in psychoanalysis but later rejected a candidate because her experience was "too focused on psychoanalysis," the employer's explanation lacked credibility. *Id.* Similarly, pretext was evident when an employer first claimed to have fired an employee "due to corporate reorganization" but later claimed it discharged the employee due to poor performance. *Scheidecker v. Arvig Enters., Inc.*, 122 F. Supp. 2d 1031, 1041 (D. Minn. 2000).

But nothing like that happened here. Ridgewater's later explanation for not hiring Salerno was entirely consistent with — indeed, elaborated upon — its earlier explanation for not hiring Salerno. Ridgewater first told Salerno that it hired a better qualified candidate. True, Ridgewater did not go into details and tell Salerno exactly why it found him lacking. But, in sparing Salerno the details, Ridgewater was acting courteously, not suspiciously. Later, after

Salerno sued, Ridgewater described exactly why it found Ferguson to be more qualified than Salerno: because Ferguson's teaching demonstration was better. There is absolutely nothing inconsistent or suspicious about Ridgewater's explanations.

Salerno has produced no other evidence from which a jury could conclude that Ridgewater used Salerno's teaching demonstration as a pretext for discrimination. Salerno's account of his demonstration essentially matches the hiring committee's. In contrast with the dynamic and interactive presentations given by the other finalists, Salerno stood before the hiring committee and read from prepared notes. The only "dispute" in the record is between Salerno's opinion that he performed well and the committee's opinion that he did not. Salerno's subjective belief that he performed well is not sufficient to create a genuine issue of material *fact* about whether the committee based its decision on a sincere belief that he had not performed well.

Salerno argues that Ridgewater's proffered explanation is pretextual because he was more qualified than Ferguson. Salerno points to his own extensive teaching history and positive student evaluations to argue that he must be a better teacher. (Nothing in the record suggests that Salerno has ever seen Ferguson teach or has any basis for comparing Ferguson's skills to his own.) But the hiring committee chose to assess teaching potential not by looking at student evaluations, but instead by asking the candidates to demonstrate their teaching abilities. Reasonable people can disagree about whether a teaching demonstration is as reliable an indicator of teaching skill as student evaluations, but there is no suggestion that Ridgewater chose one measure over another because of some age-based consideration. As far as the record reveals, the hiring committee did not consider the student evaluations of *any* candidate, but instead, as to *all* candidates, assessed teaching skill based on a demonstration. According to

Ridgewater, Ferguson gave a technology-based teaching demonstration that interested and engaged the hiring committee, while Salerno read from lecture notes and left the hiring committee cold. Applying its own criteria, the hiring committee found that Ferguson was more qualified. *Cf. Kobrin*, 34 F.3d at 703 (whether one candidate is more qualified than another must be determined with respect to the criteria the employer actually uses).

Perhaps the hiring committee was wrong; perhaps Salerno really is a better teacher than Ferguson. What matters, though, is not that the committee was correct, but that the committee was sincere. Salerno has not submitted any evidence that the hiring committee's explanation for why it did not select Salerno as a finalist was insincere, much less evidence that the "real" reason why the hiring committee ranked Ferguson (and three others) ahead of Salerno was because of Salerno's age. Nor has Salerno submitted any evidence that Strehlow was motivated by age in choosing Ferguson from among the four finalists. Ridgewater is entitled to summary judgment.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Defendant's motion for summary judgment [Docket No. 21] is GRANTED.
2.  Plaintiff's complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February  8 , 2008                         s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge